No. 896

First Circuit

LOUISIANA HIGHWAY COMMISSION v BOUDREAUX

(February 8, 1932. Opinion and Decree.)

L. L. Morgan and A. S. Cain, Jr., of New Orleans, D. M. Ellison, of Baton Rouge, L. Austin Fontenot and Leon S. Haas, Jr., of Opelousas, attorneys for plaintiff, appellant.

George K. Perrault, of Opelousas, attorney for defendant, appellee.

MOUTON, J. Plaintiff obtained the expropriation of a small strip of land for a right of way against defendant, in whose favor a jury rendered a verdict of $809 for the value of the land taken and damages.

Plaintiff appeals, claiming that the amount allowed should be reduced. This presents the vital issue in the case.

The farm of defendant over which the roadway has been taken contains 23½ acres. The road runs along the southwestern corner of the tract, cutting off on the west side, leaving a small strip measuring 1.32 acres, and, on the east side of the roadway, 20 acres, being the remainder of defendant's farm. The roadway proper takes 1.69 acres. Defendant claims that his land is worth $100 an acre. A large number of witnesses testified on this proposition, some testifying it was worth that amount, others that it was not.

In the case of City of Shreveport v. Pedro, 170 La. 351, 127 So. 865, the court said that a jury of freeholders in expropriation proceedings to some extent, are experts, and have authority to rely on their own opinions, as well as on the testimony adduced before them. The court said further that their verdicts are entitled to great respect, and should not be interfered with except in case of gross or manifest error, citing a long list of decisions in support of its conclusions.

In view of that ruling, we do not think the evidence warrants a reduction of the amount of $169 allowed by the jury for the 1.69 acres expropriated for the roadway. This item was allowed under article 11 of defendant's reconventional demand.

The cutting of the land into two parcels necessitates the building of 1,450 feet of fencing. Defendant in article III of his answer is claiming $100 for the material, labor, and upkeep of this fence, and was granted that amount by the jury. The proof, we find, supports this claim.

Another item of $50 is asked by defendant in article IV of his answer for the labor, material, and upkeep of two bridges to be erected over drainage ditches to be constructed on both sides of the highway. The jury allowed defendant $75 for that item, being $25 over the sum demanded therefor. Obviously, defendant is not entitled to that overplus, not having amended his answer, asking to augment his demand. Code Prac., art. 156; Carre v. Massie, 113 La. 608, 37 So. 530. Besides, the evidence shows that $50 is all that defendant is entitled for that item.

In article V of his answer defendant asked for $50 for the preparation of the soil taken for the roadway, and for the crops of watermelons and corn which were growing there. The verdict allows $25 for that item in which we find no error.

In the case of McMahon and Perrin v. St. Louis, Arkansas & Texas Railroad Co., 41 La. Ann. 827, 6 So. 640, 641, the court rendered an elaborate opinion on the subject of the compensation which should be allowed for property taken and damaged for public purposes in expropriation proceedings. The court said that the measure of compensation for the property taken is its value; and for the damages the measure of compensation is the diminution in the value of the property. Continuing, the court said there is no warrant for extending the liability beyond this. In making itself more explicit, the court said further:

"We are simply to inquire what damage has been done to the property, i. e., to its value for rental and sale."

Mere consequential injuries to the owner whose land is expropriated resulting from discomfort, inconvenience, loss of business, and the like, says the court in that decision, are not rescued from the doctrine of damnum absque injuria. This ruling of the court was later approved in the case of Opelousas, Gulf & N. E. Ry. Co. v. St. Landry Cotton Oil Mill Co., 121 La. 796, 46 So. 810.

Counsel for defendant cites the case of Vicksburg, Shreveport & Pacific Railroad Company v. Henry T. Dillard, and Vicksburg, S. & P. R. Co. v. J. M. Foster et al., 35 La. Ann. 1045. In those cases the two plantations involved were to be cut in the middle by the railroad tracks. The court in those cases, after giving the disastrous consequences to the plantations which would result from the construction of the railway, said that it would not have

amounted to a mere inconvenience, but would have meant "ruin" to the owners.

In the above case, it will be noted that, in the concluding part of the opinion, the court said some of the witnesses had adopted the mode of ascertaining the difference between the value of the plantation before the railroad bed was laid and now, "and by some of them the difference was stated at from five to ten thousand dollars less now than before." This latter quoted statement of the court shows that some of the witnesses had based their estimate of value on the diminution in the price at the time the railway was built.

This harmonizes the ruling in that case with the decisions in the 41 La. Ann. and 121 La., hereinabove referred to. If that ruling is not in keeping with these later decisions, we must adopt the more recent expressions of the court as establishing the doctrine which now governs in such cases.

The owner, in expropriation under eminent domain, is "entitled to the market value of the property taken, and to such damages as may result to the remainder of the property of which the expropriated property forms a part, and to nothing else. It is not a question of the value of the property to the owner, or its adaptability to the uses of the owner, but of its market value; taking into account, however, all the considerations that would weigh at private sale." Louisiana Ry. & Navigation Co. v. Jones, 113 La. 29, 36 So. 877.

We shall now proceed to the consideration of the other items allowed by the jury under the ruling in the 41 La. Ann., and 121 La., cases above cited, and the decision in the 113 La. 29, 36 So. 877, which directs the method of fixing the value of the property expropriated, and such damages as may result to the remainder of the property.

In article VI of the reconventional demand, defendant is asking $100 for depreciation in the value of the parcel of 1.32 acres which will be separated from the 20 acres, remainder of the tract, and which will lie west of the proposed highway. The verdict allowed him $65 for this alleged depreciation or diminution in value of that small strip.

Some of the witnesses testified that, detached as it is from the larger tract, it might be used for a filling station or for a store building. The proof shows that the section in which this land is situated is almost entirely used for agricultural or farming purposes. It could hardly be sold or leased for the purposes indicated by the testimony of the witnesses, above referred to. Its market value has been diminished considerably by reason of its insignificant area, and its separation from the main tract. We find that the sum of $65 given for the 1.32 acres of land by the verdict for depreciation is supported by the evidence, and this amount will not be decreased or denied.

In the VII article defendant is demanding $250 incidental inconvenience for the cultivation of the two parcels of land which will result from the passage of the highway, for which he was granted $125. For any such inconvenience or discomfort the law allows no compensation for the reasons hereinabove stated in the decisions referred to.

In article VIII of the answer defendant alleges that the building of the highway will create a long, sharp angle for a dis-

tance of approximately 900 feet along the highway, adding to the annoyance and inconvenience in the cultivation of the 20 acres which will remain after the taking of the 1.69 acres for the roadway, and 1.32 for the strip above mentioned.

Under that article defendant asked $400, and was allowed $75. For the reasons above stated, that amount is not recoverable for any annoyance or inconvenience which might result from the passage of the highway.

It is true that in article VIII defendant also alleged that the regularity of shape of the larger tract and its appearance which gave it valuable characteristics would be destroyed by the building of the roadway. There is no evidence to show that a diminution in its value would result from any such cause, and, we know of no legal authority which sanctions compensation for such æsthetic considerations.

In the IX article, which is the last of the reconventional demand, defendant says his land is hedged in on three sides by roads or highways; that lands available and contiguous to his property or in its vicinity could not be purchased except at exorbitant prices as to render them unprofitable for farming. In this respect defendant introduces a new element in his claim for compensation. There is no evidence in the record to show that he would be unable to buy adjoining lands at reasonable prices or that the market value of his small or large tract would be affected by his inability to purchase contiguous property. Such an element of damage, particularly when there is no proof to support it, cannot enter into the computation of damages in an action of this character.

In article IX defendant also alleges that the expropriation would result in the re-

duction in the area of his farm which would cause a lessening in the value of his land as a whole. For that alleged result, taken in connection with the allegation that he would not be able to buy adjoining land, defendant is claiming the sum of $450.

In the foregoing averment, inferentially he brings up the question of depreciation or diminution in the value of his land.

The evidence shows, as we have above stated, that a depreciation in value had resulted for the strip cut off by the highway, and the allowance of $65 for this diminution remains undisturbed. That strip, including the roadway, lopped off only a small fraction over 3 acres from defendant's farm, leaving 20 acres. The evidence fails to show that the market value of this remainder of the farm was affected or diminished, and, if any inference could be drawn from the evidence establishing any diminution, the amount of depreciation could not possibly be fixed under the proof with any approximation to accuracy or legal certainty.

The jury allowed $175 for the claim under article IX, which must be denied.

The following items are therefore disallowed by this court: $25 reduction from allowance on article IV; $125, $75, $175, totaling $400 to be deducted from the sum of $809 allowed below, leaving the sum of $409 which defendant is entitled to recover. The judgment must be amended accordingly.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and is hereby amended by reducing it from the amount of $809 to the sum of, $409; and, as thus amended, it be affirmed; appellee to pay cost of appeal.